UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL C. DAVIS            :

                             :

        v.                :     C.A. No. 04-92T

                             :

JO ANNE B. BARNHART,       :

Commissioner, Social Security    :

Administration               :

FILED

MAY 2 0 2005

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

## REPORT AND RECOMMENDATION

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on March 17, 2004 seeking to reverse the decision of the Commissioner. Plaintiff has filed a Motion for Summary Judgment seeking remand for further proceedings under sentence four of 42 U.S.C. § 405(g). The Commissioner filed a Motion to Affirm her decision on April 29, 2005. Plaintiff has not filed a reply brief. This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B). Based upon my review of the record, the legal memoranda filed by the parties and my independent legal research, I find there are legal errors in the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act which warrant remand. Consequently, I recommend that the Commissioner's Motion to Affirm (Document No. 13) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 12) be GRANTED.



## I.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB on November 9, 2001, alleging disability as of November 1, 2001. (Tr. 86-88). The application was denied initially on April 8, 2002 (Tr. 53-56) and on reconsideration on July 1, 2002. (Tr. 59-62). On October 30, 2003, Administrative Law Judge Hugh S. Atkins ("ALJ") held a hearing at which Plaintiff, represented by counsel, a medical expert (orthopedist), and a vocational expert ("VE"), testified. The ALJ issued a decision on December 9, 2003, finding that Plaintiff was not under a disability and thus not entitled to DIB. (Tr. 12-20). On January 30, 2004, the Appeals Council denied Plaintiff's request for review. (Tr. 6-8). A timely appeal was then filed with this Court.

## II.   THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ failed to follow Social Security regulations in evaluating Plaintiff's mental impairment. Plaintiff also argues that the ALJ erroneously determined that Plaintiff's mental impairment was not severe, erroneously gave diminished weight to the opinion of the treating orthopedist, failed to consider all the medical evidence, interpreted the medical data and arrived at his own RFC which was not based on any examining source opinions and failed to consider properly the Plaintiff's subjective complaints and explain his credibility findings. Finally, Plaintiff argues that because of the ALJ's errors, his decision was not supported by substantial evidence. The Commissioner argues that the ALJ's conclusions are legally correct and supported by substantial evidence and thus must be affirmed.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991) The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey v. Barnhart, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman v. Barnhart, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material – relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

-5-

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty v. Sullivan, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.    See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

-7-

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey v. Barnhart, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a

claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey v. Barnhart, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey v. Barnhart, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen v. Chater, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty v. Sullivan, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether

the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment." Nguyen v. Chater, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

      (1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

      (2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

      (3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

      (4)     Treatment, other than medication, for relief of pain;

      (5)     Functional restrictions; and

      (6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg v. Apfel, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia v. Sec'y of Human Servs., 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.   APPLICATION AND ANALYSIS

### A.   Background

Plaintiff was thirty-seven years old at the time of the ALJ's decision. (Tr. 86). He has a ninth-grade education and past relevant work as a tool and die setter and a power press operator. (Tr. 27-28, 32, 108). Plaintiff is a single father, and, at the time of the ALJ hearing, he and his six year old son lived with Plaintiff's mother. (Tr. 28-30). Plaintiff sought treatment for back and leg pain

-11-

from orthopedist Dr. Christopher F. Huntington, beginning in March 2000. (Tr. 210). In March 2001, Dr. Huntington indicated that Plaintiff requested surgical intervention for his pain (Tr. 215), and on June 25, 2001, Plaintiff underwent back surgery (fusion and decompression). (Tr. 168-170). Following the surgery, Dr. Huntington reported that Plaintiff had been "doing extremely well," until he developed "severe low back pain" after lifting a large log while camping. (Tr. 217). In August 2001, the physician found Plaintiff to have tenderness and decreased range of motion of the back due to spasm. (Tr. 217). X-rays of the lumbar spine, however, showed no changes with screws and bone graft in good location. (Tr. 217).

In September 2001, Dr. Huntington noted that Plaintiff was doing "extremely well," despite his recent back injury. (Tr. 218). Plaintiff reported that he could not stand for too long, but could sit "forever." (Tr. 218). Dr. Huntington found Plaintiff to have 5/5 motor strength in the major muscle groups in both lower extremities, and negative straight leg raising bilaterally. (Tr. 218). X-rays of the lumbar spine showed a solid fusion with hardware in good location. (Tr. 218). Dr. Huntington recommended a magnetic resonance imaging ("MRI") test, a course of steroid injections and a trial of aqua therapy. (Tr. 218).

On October 12, 2001, Dr. Huntington cleared Plaintiff to return to light-duty work. (Tr. 219). A subsequent MRI of the lumbar spine was "unremarkable with no significant problems." (Tr. 219). Upon examination in November 2001, Plaintiff reported that he was laid off from his job, and felt better not working. (Tr. 219). He said he was attempting to get his GED and was considering going to "college at a vocational school." (Tr. 219). His examination was stable with minimal paraspinal tenderness and no midline tenderness. (Tr. 219).

-12-

Upon examination in March 2002, Plaintiff reported no change in his back pain, decreased lower extremity pain and numbness, no lower extremity weakness, and relief with pain medication. (Tr. 220). Examination revealed no tenderness, full range of motion, symmetrical reflexes bilaterally, negative straight leg raise and cross leg raise, and a normal motor exam. (Tr. 220).

On June 25, 2002, Dr. Youssef Georgy, a state agency physician, opined that Plaintiff was able to perform light work with occasional limitations on climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 202-209). He opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, and could sit and/or stand for up to six hours in a workday. Id.

In July 2002, Plaintiff reported that his back pain was unchanged and that he had "good and bad days" with his leg pain, but that the pain was relieved with medication. (Tr. 222). Upon examination, Plaintiff was noted to have no tenderness, improved range of motion, symmetrical reflexes bilaterally, straight leg raises to ninety degrees, and a normal motor exam. (Tr. 222). Physical therapy and home stretching and strengthening exercises were recommended. (Tr. 222). In October 2002, Plaintiff indicated that medication was still providing relief. (Tr. 223). Examination revealed no tenderness, full range of motion, symmetrical reflexes bilaterally, straight leg raises to forty-five degrees, decreased sensation to light touch on the left shin, and normal motor exam. (Tr. 223). Home physical therapy exercises were explained and demonstrated for Plaintiff. (Tr. 223).

On October 24, 2002, Dr. Huntington, or a member of his staff, completed a form for the Rhode Island Department of Human Services which indicated that Plaintiff had impairments of severe leg pain radiating down to his left foot with foot numbness and sharp, deep back pain, but that

-13-

his prognosis was "good," and his conditions could be expected to last six to twelve months. (Tr. 224-229). He opined that Plaintiff could walk, sit, stand, and reach for one hour out of an eight-hour workday, and could never lift, carry, bend, or stoop. (Tr. 229). He indicated that Plaintiff had no limitations on mental activities, although there is no indication that Dr. Huntington performed a psychological examination of Plaintiff in addition to his clinical examinations. (Tr. 229). On January 21, 2003, Dr. Pera indicated that Plaintiff's back pain was a severe impairment, but that his prognosis was good, and the impairment was not expected to last more than twelve months. (Tr. 262).

On March 12, 2003, Dr. Jerrold Rosenberg examined Plaintiff for complaints of lower back pain, and found him to have limited range of motion, diffuse tenderness and spasm, leg weakness, and reduced leg sensation. (Tr. 133). He recommended an electromyographic ("EMG") screening, a cortisone injection, and physical therapy. (Tr. 133). On March 18, 2003, Dr. Rosenberg found Plaintiff to have leg weakness with limited range of motion and lumbar muscle spasm and tenderness. (Tr. 134). An EMG screening of multiple muscles and nerves was performed, and the results were normal with no evidence of an acute root level injury. (Tr. 134-137). Dr. Rosenberg opined that he was optimistic that he could improve Plaintiff's functional status. (Tr. 135).

On March 24, 2003, and again on April 7, 2003, Dr. Rosenberg found Plaintiff to have mild improvement and recommended cortisone injections. (Tr. 243-244). On April 16, 2003, Dr. Rosenberg noted that Plaintiff was responding well to the cortisone injections, and that his physical examination revealed mild improvement. (Tr. 245). On April 21, 2003, Dr. Rosenberg noted that Plaintiff's chief complaint remained chronic pain, and he reduced Plaintiff's medication (Tr. 246),

and on May 6, 2003, he noted that he wanted to continue to reduce Plaintiff's dependency on narcotic medications and emphasize exercise. (Tr. 247).

On August 4, 2003, Plaintiff presented to the Miriam Hospital emergency room for back pain. (Tr. 249-255). He was diagnosed with chronic low back pain, and treated with Motrin and Vicodin. (Tr. 250, 252, 254). On August 15, 2003, Dr. Huntington wrote a letter in response to a request from Plaintiff's attorney indicating that Plaintiff was still in his care for L5-S1 herniated nucleus pulposus ("HNP") and degenerative disk disease L5-S1, status post lumbar fusion. (Tr. 261). Dr. Huntington noted that Plaintiff's prognosis was "fair with expected permanent symptoms and limitations." (Tr. 261). There are no treatment notes in the record from Dr. Huntington after October 23, 2002.

At the hearing on October 30, 2003, medical expert Dr. Edward Spindell, an orthopedic surgeon, testified that Plaintiff's back impairment did not meet or equal any listed impairment. (Tr. 44).

On January 29, 2002, Dr. William S. Unger performed a consultative psychological evaluation of Plaintiff. (Tr. 148-154). Upon examination, Dr. Unger noted that Plaintiff had normal gait, and adequate eye contact and rapport. (Tr. 148). Plaintiff told Dr. Unger that other than counseling for depression in September 2001, he had not undergone any other mental health treatment. (Tr. 149). He also reported that he drank heavily and smoked marijuana three times per week. (Tr. 149). He indicated that he did not have any problems sleeping, and that his activities of daily living included doing his own household chores, managing his bills, watching television, and visiting with his family. (Tr. 150).

-15-

Dr. Unger found that Plaintiff had adequate concentration, frustration tolerance, insight, and judgment, and was alert, oriented, cooperative, articulate, and calm, with no thought disorder observed. (Tr. 150). Upon administering an intelligence test, Dr. Unger found that Plaintiff's overall level of intellectual functioning fell in the low-average range. (Tr. 151). A Mini-Mental Status Examination revealed normal results. (Tr. 151). He diagnosed dysthymic disorder and learning disorders in the areas of mathematics and spelling. (Tr. 153).

On April 4, 2002, Dr. Mary Ann Gnys, a state agency psychologist, opined that Plaintiff had a severe impairment of dysthymia and learning disorder. (Tr. 180-188). As a part of a mental RFC assessment, Dr. Gnys opined that Plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and accept instructions and respond appropriately to criticism from supervisors, but was otherwise not significantly limited. (Tr. 189-191). Upon reconsideration on June 26, 2002, Dr. Harold R. Musiker, a state agency psychologist, opined that Plaintiff's dysthymia was not severe, and that he had no more than mild limitations due to the impairment. (Tr. 192-200).

### B.    Did the ALJ Err in Finding Plaintiff's Mental Impairment to be Non-severe?

The ALJ concluded that Plaintiff's dysthymia was a "non-severe" impairment as defined in 20 C.F.R. § 404.1521. (Tr. 17). The ALJ then focused his attention solely on Plaintiff's exertional limitations and ultimately concluded that Plaintiff was "capable of performing light work." Id. at 18. The ALJ determined, applying the "grids," that a finding of "not disabled" was warranted based on Plaintiff's "exertional capacity for light work, and [his] age, education, and work experience." Id. at 20.

The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment, as well as consideration of the degree of limitation such impairment may impose on the individual's ability to work. The listings for mental disorders are arranged in eight diagnostic categories. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The criteria in paragraphs B and C of the listings for mental disorders describe those functional limitations associated with mental disorders which are incompatible with the ability to work – i.e., limitations in functional areas deemed essential to work. A mental impairment is medically equivalent to a listed mental impairment if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526. An individual meeting or equaling the criteria could not reasonably be expected to engage in gainful work activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Individuals who have an impairment with a level of severity which does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity ("RFC") which would enable them to engage in substantial gainful work activity. The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled, but the impairment is nevertheless severe. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

For mental disorders, severity is assessed in terms of the functional limitations imposed by the impairment. Functional limitations are assessed using the criteria in paragraph B of the listings for mental disorders (activities of daily living; social functioning; concentration, persistence, or pace; and ability to tolerate increased mental demands associated with competitive work). A "marked" degree of limitation means more than moderate, but less than extreme. A marketed limitation may arise when several activities or functions are impaired or even when only one is impaired, so long

as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Commissioner employs a technique to ensure that ALJs obtain, consider and properly evaluate all evidence needed to evaluate mental impairment severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The technique is used in connection with the sequential evaluation process. See 20 C.F.R. §§ 404.1520a and 416.920a.

The presence of a mental disorder should be documented primarily on the basis of reports from individual providers, such as psychiatrists and psychologists, and facilities such as hospitals and clinics. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Information from both medical and non-medical sources may be used to obtain detailed descriptions of the individual's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased mental demands (stress). This information can be provided by programs such as community mental health centers, day care centers, and family members who have knowledge of the individual's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1. In some cases, descriptions of activities of daily living or social functioning given by individuals or treating sources may be insufficiently detailed and/or may be in conflict with the clinical picture otherwise observed or described in the examinations or reports. It is necessary to resolve any inconsistencies or gaps that may exist in order to obtain a proper understanding of the individual's functional restrictions.

An individual's level of functioning may vary considerably over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor. Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, it is vital to obtain evidence from relevant sources over a

-18-

sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1. This evidence should include treatment notes, hospital discharge summaries, and work evaluation or rehabilitation progress notes if these are available. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Some individuals may actually have worked during the period of time pertinent to the determination of disability. Information concerning the individual's behavior during any attempt to work and the circumstances surrounding termination of the work effort are particularly useful in determining the individual's ability or inability to function in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

As Plaintiff correctly notes, in evaluating a claimant's alleged mental impairments, the ALJ is required to follow a "special technique" outlined in 20 C.F.R. § 404.1520a. Pursuant to the technique, the ALJ must determine whether or not Plaintiff's impairments are "severe" by rating the functional limitation which results from the impairment(s) in four specific areas: "[a]ctivities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3)-(4), (d). A mental impairment will generally be considered "non-severe" if the ratings in such areas are "none" or "mild." 20 C.F.R. §§ 404.1520a(d)(1), 404.1521. Plaintiff argues that the ALJ's mental impairment finding is not supported by the record. The Government responds by arguing that "Plaintiff did not allege disability due to a mental impairment, nor did he testify to having any mental impairments or any function limitations due to cognitive problems." See Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985) (claimant did not allege any mental impairment in disability application or at ALJ hearing).

The Government's assertion is plainly incorrect. Although Plaintiff's claim was based primarily on his back condition, the record contains numerous references to claimed mental

-19-

impairments. For instance, Plaintiff's counsel stated at the ALJ hearing that Plaintiff "suffers from a learning disability, learning disorder and that's 5F, and that he also has some affective disorder, bipolar, but he does not treat with a psychiatrist because he has no insurance and he tells me he can't do that at this time." (Tr. at 26). Exhibit 5F is a report dated April 4, 2002 from Dr. Mary Ann Gnys, a state agency psychologist, who opined that Plaintiff had a severe impairment of dysthymia and learning disorder. (Tr. 180-188). Plaintiff testified that he was not in psychiatric therapy because he lacked insurance and he was "just losing all motivation to do anything basically." (Tr. 35). As to memory and concentration, Plaintiff testified that it depends on his pain which "engulfs" him at times. (Tr. 36). Although the medical expert noted the lack of ongoing psychiatric treatment, he referenced a history of "dysthymic disorder," "learning disability," "attention deficit disorder" and "prior antisocial behavior." (Tr. 44). Finally, the record includes benefit applications referencing "affective disorders," "ADD and poor reading ability," and depression. (Tr. 51-53, 124).

In his decision, the ALJ specifically referenced only one of the reports in the record dealing with mental status. See Exhibit 3F. (Tr. 148-54). Exhibit 3F is a report of a psychological examination by Dr. William Unger which took place on January 29, 2002. Dr. Unger diagnosed dysthymic disorder and learning disorders. Dr. Unger's report does not contain a formal mental RFC assessment. In fact, the report does not specifically assess Plaintiff's work capacity but rather concludes that "given the claimant's level of cognitive function, I do believe he will be able to manage his own funds." (Tr. 154). The ALJ based his conclusion regarding Plaintiff's claimed mental impairment primarily on Dr. Unger's report and the fact that Plaintiff was not receiving mental health treatment and had never taken psychiatric medications. However, the ALJ failed to discuss the other psychological reports in the record in any fashion and failed to indicate if those

reports were considered and the weight, if any, accorded to them. For instance, Dr. Mary Ann Gnys, a state agency psychologist, found Plaintiff to have a "severe" impairment due to dysthymia and learning disorder. (Tr. 180). She completed a detailed mental RFC assessment and determined that Plaintiff had mild limitation as to activities of daily living and moderate limitation as to social functioning, and concentration, persistence, or pace. (Tr. 185). The ALJ also failed to mention the report of Dr. Harold Musiker, also a state agency psychologist, who shared Dr. Gnys' diagnosis but rated Plaintiff's functioning as mildly or not impaired. (Tr. 193-200).

The Commissioner contends that the ALJ considered "all of the evidence of record" and appropriately determined that Plaintiff had a non-severe mental impairment and no cognitive impairment. In making this assertion, the Commissioner cites to the ALJ's decision at Tr. 17. However, in his decision, the ALJ only discusses Dr. Unger's report and fails to discuss the reports of Dr. Gnys or Dr. Musiker. The Commissioner surmises that the ALJ considered Dr. Gnys' report and determined that her opinion was not supported by the record as a whole. There is, however, absolutely no basis in the ALJ's decision to leap to this conclusion.

Although the outcome may ultimately not change, this Court concludes that the ALJ erred in not explicitly discussing Dr. Gnys' reports and Dr. Musiker's report in addition to his discussion of Dr. Unger's report. Based on the ALJ's Decision, this Court is left to guess as to whether these reports were considered and, if so, the weight given to them. See 20 C.F.R. § 404.1527(f)(2)(ii). If the ALJ chose to reject or discount Dr. Gnys' opinion of a severe mental impairment, the ALJ should have explained, at least in summary fashion, his reasons for doing so. This Court is uncomfortable stepping into his shoes after the fact and guessing as to his thought process. Again, while the ALJ may very well have reached the correct conclusion and may reach the same conclusion

-21-

on remand, this Court concludes that the failure to address the reports discussed above was in error and warrants remand.

### C.      Did the ALJ Err in Applying the "Grids"?

The ALJ found Plaintiff to be capable of light work and accordingly not disabled pursuant to the grids.  The grids are based on a claimant's exertional capacity (an individual's ability to meet job strength requirements) and thus may not be applied to a claimant who has non-exertional limitations (such as mental impairment) which significantly impair claimant's ability to perform. Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994); Seavey v. Barnhart, 276 F.3d at 5.  Because this Court concluded that the ALJ erred in evaluating Plaintiff's alleged mental impairments, it is premature to determine whether or not the ALJ was correct in relying on the grids.  If the ALJ on remand ultimately concludes, based on substantial evidence of record, that Plaintiff's alleged mental impairments do not significantly impair his ability to perform light-duty work, then his reliance on the grids would be appropriate.  If he concludes otherwise, reliance on the grids may not be appropriate.

### D.      Other Claimed Errors

Plaintiff also argues that the ALJ failed to give appropriate weight to Dr. Huntington's opinion as treating physician and failed to consider all of the medical evidence.  This Court has reviewed the ALJ's Decision and the record and finds no basis for either of these arguments.  The ALJ's RFC assessment that Plaintiff is able to perform light work is supported by substantial evidence.  Furthermore, the ALJ's assessment that Plaintiff's allegations regarding his limitations are "not totally credible" is supported by substantial evidence and adequately explained in his decision.

Although the record may ultimately support a finding of non-disability at Step Five, this Court declines the Commissioner's invitation to step into the ALJ's shoes and speculate as to the weight, if any, given to psychological reports not even referenced in the ALJ's Decision. This Court does not discount the difficulty of the ALJ's job duties given the high number and complexity of the cases presented. In addition, this Court notes that the ALJ thoroughly reviewed and analyzed the record in finding that Plaintiff had a light-duty RFC and that his allegations "regarding his limitations are not totally credible." (Tr. 18-19). This Court, however, does not believe it is appropriate under the specific facts and posture of this case for the Court to undertake an independent review of the record, and to review and weigh psychological evidence not referenced and analyzed in the ALJ's Decision.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion to Affirm (Document No. 13) be DENIED and that Plaintiff's Motion for Summary Judgment (Document No. 12) be GRANTED. I further recommend that the District Court enter Final Judgment for Plaintiff reversing the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for additional proceedings consistent with this opinion. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

LINCOLN D. ALMOND
United States Magistrate Judge
May 20, 2005

Accepted in the absence
an objection,

Ernest C. Torres
Chief, US District Judge

Date: 6/16/05